## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## SOUTHWEST DIVISION

KIMBERLY BREUIL and )
ANTHONY BREUIL, )
                Plaintiffs, )
            v. )
MICHAEL WHITE and )    Case No.: 3:23-cv-05048-MDH
LIBERTY LAND CARRIERS, LLC, )
               Defendants. )

## ORDER

Before the Court is Defendants' Motion for Partial Summary Judgment on Plaintiff's Claims for Lost Earnings and Earning Capacity (Doc. 105); Defendants' Motion to Exclude the Expert Testimony of Brooke Liggett (Doc. 100); Defendants' Motion to Exclude the Expert Testimony of Brett Miller (Doc. 102); and Defendants' Motion to Exclude the Expert Testimony of Brendan Bourdage, PhD. (Doc. 107).

### MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendants move for partial summary judgment to exclude Plaintiff's claims for lost earnings and earning capacity. Plaintiff alleges injuries from a motor vehicle accident that occurred on October 8, 2021. She alleges her injuries have caused her pain looking downward, as well as difficulty lifting items. As part of her alleged damages, Plaintiff seeks future lost wages and lost earning capacity in an amount between $483,273 and $1,085,644. Plaintiff alleges that her injuries caused her to quit her job at the United States Postal Service and work at Pizza Hut or a similarly lower paying job for the rest of her working life. Plaintiff alleges she has incurred and will incur in the future, wage loss and lost earning capacity.

1

Plaintiff has designated Brooke A. Liggett, CPA, as an expert witness related to future lost earnings. Plaintiff designated Liggett to testify regarding the value of Plaintiff's economic damages. Defendants have moved to exclude Liggett (as discussed below). Defendants argue Liggett is not a vocational or medical expert and is not offering any vocational expert opinions. Defendants contend Liggett should not be allowed to opine on lost earnings.

Defendants move for partial summary judgment arguing Plaintiff has not retained a vocational expert and as such cannot submit a claim for these damages. Defendants further argue their own designated vocational rehabilitation expert found no loss of vocational capacity for Plaintiff and no evidence of any loss of ability to perform her job after the accident.

Plaintiff argues Missouri permits a personal injury plaintiff to prove and recover a claim for impairment of earning capacity based upon the plaintiff's own testimony. Citing *Fairbanks v. Weitzman*, 13 S.W.3d 313 (Mo. App. E.D. 2000). "The assessment of damages is primarily the function of the jury." *Id.* at 321, citing *King v. Unidynamics Corp.*, 943 S.W.2d 262, 268 (Mo.App. E.D.1997). Further, a plaintiff who voluntarily fails to return to her previous employment, because "she knew her employer would not be able to hold her position open" has been found to have presented evidence of lost wages sufficient to go to the jury. *Id.*, citing *McPherson v. Bi–State Dev. Agency*, 702 S.W.2d 129, 132 (Mo.App. E.D.1985).

Here, the substance of Defendants' motion for summary judgment creates a factual dispute to be presented during trial. Whether Plaintiff has a claim for lost earnings and whether Plaintiff could perform the same job after the wreck are factual issues for the jury to determine. Simply because Defendants' vocational expert opines Plaintiff has no loss of ability to perform does not render the claim without merit. Further, the Court does not find that Plaintiff is required to retain a vocational expert to claim lost earning capacity. Defendants may challenge Plaintiff's claims

through cross examination, expert testimony, and the presentation of other evidence at trial. At the close of evidence, the Court will determine what evidence, if any, has been proffered and what claims may be submitted to the jury. If Plaintiff has failed to present sufficient evidence on a claim for future lost wages Defendants may raise a challenge at that time. However, the Court finds no basis to exclude Plaintiff's claims or to grant partial summary judgment on the claim at this time. Wherefore, for the reasons stated herein, the Court **DENIES** the motion for partial summary judgment. (Doc. 105).

## MOTIONS TO EXCLUDE

Defendants move to exclude three experts arguing the experts have failed to satisfy the requirements for admissible expert testimony set forth in FRE 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579 (1993) and *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999).

Under Rule 702, trial courts serve as gatekeepers, "making a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Glastetter v. Novartis Pharms. Corp*., 252 F.3d 986, 988 (8th Cir. 2001) (quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579, 592–93 (1993)). District courts have considerable discretion in ruling on the admissibility of expert testimony and must separate expert opinion evidence "based on 'good grounds' from subjective speculation that masquerades as scientific knowledge." *Id.* at 989.

An expert witness must (1) be qualified by virtue of their specialized "knowledge, skill, experience, training, or education," (2) provide relevant testimony, in that it "assists the trier of fact to understand the evidence or to determine a fact in issue," and (3) provide reliable testimony,

in that it is based on trustworthy evidence. FED. R. CIV. P. 702; *Lauzon v. Senco Prods., Inc*., 270 F.3d 681, 686 (8th Cir. 2001). The proponent of the expert testimony bears the burden of establishing that each of these criteria is met by proving the admissibility of the evidence by a preponderance of the evidence. *Lauzon*, 270 F.3d, at 686.

## DISCUSSION

To begin, all rulings by this Court on *Daubert* motions are preliminary in nature. The Court's rulings are subject to change based on the evidence and testimony presented during trial.

### 1. Brooke Liggett

Brooke Liggett is Plaintiff's retained expert witness on the issue of the economic value of Plaintiff's loss of earning capacity. Plaintiff's claims are state law claims for personal injuries. The case was removed from Newton County.

Defendants argue Liggett is not a vocational expert and that her opinion is therefore unreliable. Liggett is an accountant and calculates Plaintiff's change of jobs to have caused Plaintiff to lose somewhere between $488,273 and $1,085,644 in earnings over the course of her life. Plaintiff states Liggett does not opine as to whether the wreck caused Plaintiff to quit her job, whether Plaintiff could have continued to work for the USPS or any other causation issue. Rather, Liggett simply opines on the difference in earning capacity from Plaintiff's USPS job to her current employment.

Liggett based her opinion on Plaintiff's testimony that she could no longer work at USPS and Liggett formed an opinion based on Plaintiff's testimony and her current employment earnings. Liggett specifically testified she is not a vocational expert and was not giving a vocational opinion. Instead, Liggett simply calculated the losses for lost earning capacity and retirement benefits. This is certainly within the expertise of a CPA. Plaintiff states that Liggett has no opinions

4

regarding whether Plaintiff's injuries were caused by Defendants or whether they caused her to have diminished earnings. Plaintiffs argue that if the jury were to find Defendants caused Plaintiff to quit her employment at USPS Liggett's opinion would assist the jury in arriving at a calculation for what damages might be based on any such finding.

Here, the Court finds Liggett is qualified to testify about the present value calculations. The arguments raised by Defendants may be properly raised during cross examination and the presentation of evidence. There is nothing in the record to suggest that Liggett has any opinion about causation or any vocational opinions and any such testimony would not be permitted. Liggett may testify as an accountant relying on other admissible testimony. The motion to exclude Liggett is **DENIED**. (Doc. 100).

### 2. Brett Miller, M.D.

Dr. Miller is an orthopedic surgeon who conducted an independent medical examination of Plaintiff. Defendants argue Dr. Miller should be precluded from opining on Plaintiff's mental health conditions that allegedly resulted from the accident. In response, Plaintiffs state that they have withdrawn Dr. Miller's opinions, if any, pertaining to Plaintiff's mental health and/or depression and as a result this motion may be rendered moot. In reply, Defendants argue the Court should exclude Dr. Miller's opinions regarding all of Plaintiff's alleged mental health conditions because he is not qualified to provide such opinions as an orthopedic surgeon.

The Court finds Plaintiffs have indicated Dr. Miller will not testify or give an opinion related to Plaintiff's mental health or any depression related opinions. Plaintiffs have withdrawn any such opinions on the record in their briefing. If Plaintiffs subsequently attempt to introduce any such opinions from Dr. Miller during trial the Court will address Defendants' objections at that time. However, Plaintiffs have indicated they have withdrawn Dr. Miller's opinions on any

such issue. Given the withdrawal of these opinions, no such opinions will be permitted during trial and the motion to exclude is **DENIED as moot**. (Doc. 102).

### 3. Brendan Bourdage

Brendan Bourdage has submitted his report from RPSAVA - accident reconstruction – biomechanical analysis. His resume reflects he has a Ph.D, in Educational Policy, Planning, and Leadership, William & Mary, an M.S. in Kinesiology, California Polytechnic University, Humboldt, a 2010 U.S. Army Corps of Engineers Officer Basic Course, 2001 and a B.S., Electrical Engineering, Santa Clara University, 2000. He lists numerous continuing education courses in crashes, collision reconstruction and investigation, and other training related to car wrecks. He has licenses and registrations in engineering, traffic accident reconstruction and functional movement and has published articles and presented seminars on the same. He states he has expertise in collision reconstruction, biomechanical analysis, and injury causation.

Defendants contend Bourdage lacks the requisite qualifications to provide his proffered testimony regarding the impact speed of the collision, the change of velocity of Plaintiff's vehicle during the collision, the impact of the collision on Plaintiff, and Plaintiff's injuries. Specifically, Defendants argue Bourdage is not a medical expert and should be precluded from opining as to Plaintiff's alleged injuries and the alleged causes of any such injuries. Defendants argue Bourdage also lacks the requisite engineering expertise to provide his proffered biomechanical opinions. Defendants move to strike Bourdage's proffered opinions stating they lack any relevance to the case because they are not sufficiently tied to the facts of the case and will not aid the jury in resolving any factual dispute. Finally, Defendants contend Bourdage's methodology is unreliable.

The Court has reviewed the CV and report of Bourdage. The Court finds Defendants' arguments and disagreements regarding the expert opinion as relayed in his report paragraphs 1

through 5 can all be adequately addressed through cross-examination. Bourdage may also express his opinion as set forth in his report paragraphs 6 and 7 of his conclusions on how rear impact collisions can cause injuries and the mechanisms and factors which impact those injuries. However, Bourdage is not a medical doctor and cannot, and will not, be allowed to testify as to what injuries this Plaintiff actually suffered in this collision.

For the reasons set forth herein, the Court does not find a basis to strike Bourdage as an expert and the motion is **DENIED**. (Doc. 107)

**IT IS SO ORDERED.**

Date:  June 17, 2025

   *s/ Douglas Harpool*           
**DOUGLAS HARPOOL**
**UNITED STATES DISTRICT JUDGE**
